**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 19-3914 and 19-3995

_____

SUSAN G. FISCHER; JEANETTE SPECK,
on behalf of themselves and others similarly situated,

Appellants in Case No. 19-3914

v.

GOVERNOR OF NEW JERSEY; NEW JERSEY EDUCATION ASSOCIATION;
TOWNSHIP OF OCEAN EDUCATION ASSOCIATION

_____

ANN SMITH; KARL HEDENBERG; MELISSA POULSON;
MICHAEL SANDBERG; LEONARDO SANTIAGO; and RACHEL CURCIO,
on behalf of themselves and others similarly situated,

Appellants in Case No. 19-3995

v.

NEW JERSEY EDUCATION ASSOCIATION; CLEARVIEW EDUCATION
ASSOCIATION; HARRISON TOWNSHIP EDUCATION ASSOCIATION;
KINGSWAY EDUCATION ASSOCIATION, as representatives of the
class of all chapters and affiliates of the New Jersey Education Association;
NATIONAL EDUCATION ASSOCIATION;
CLEARVIEW REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION;
HARRISON TOWNSHIP BOARD OF EDUCATION;
KINGSWAY REGIONAL SCHOOL DISTRICT BOARD OF EDUCATION,
as representatives of the class of all school boards in New Jersey;
GOVERNOR OF NEW JERSEY;
JOEL M. WEISBLATT; PAUL BOUDREAU; PAULA B. VOOS; JOHN BONANNI;
DAVID JONES, in their official capacities as chairman and members of the New Jersey
Public Employment Relations Commission

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Nos.: 1-18-cv-10381 and 1-18-cv-15628)
District Judge: Hon. Renee M. Bumb

_____

Argued September 30, 2020

_____

Before: SHWARTZ, PHIPPS, and FISHER, Circuit Judges.

(Filed:  January 15, 2021)

Michael P. Laffey
2nd Floor
222 Highway 35
Red Bank, NJ 07733

William L. Messenger [ARGUED]
Aaron B. Solem
National Right to Work Legal Defense Foundation
8001 Braddock Road
Suite 600
Springfield, VA 22151

   *Counsel for Appellants Susan G. Fischer and Jeanette Speck*

Jonathan F. Mitchell [ARGUED]
Suite 400
111 Congress Avenue
Austin, TX 78701

Walter S. Zimolong, III
Suite 300
353 West Lancaster Avenue
Wayne, PA 19087

   *Counsel for Appellants Ann Smith, Karl Hedenberg, Melissa Poulson, Michael
   Sandberg, Leonardo Santiago, and Rachel Curcio*

Eric Apar [ARGUED]
Jana R. DiCosmo
Jeremy Feigenbaum

Lauren A. Jensen
Donna S. Arons
Office of Attorney General of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625

*Counsel for Appellee Governor of New Jersey*

Raymond Baldino
Robert A. Fagella
Jason E. Sokolowski
Zazzali Fagella Nowak Kleinbaum & Friedman
570 Broad Street
Suite 1402
Newark, NJ 07102

*Counsel for Appellees New Jersey Education Association, Clearview Education
Association, Harrison Township Education Association, Kingsway Education
Association, and National Education Association*

Leon Dayan
Ramya Ravindran [ARGUED]
Bredhoff & Kaiser
805 15th Street, N.W.
Suite 1000
Washington, DC 20005

*Counsel for Appellees New Jersey Education Association, Township of Ocean
Education Association, Clearview Education Association, Harrison Township
Education Association, Kingsway Education Association, and National Education
Association*

Jeffrey R. Caccese
Comegno Law Group
521 Pleasant Valley Avenue
Moorestown, NJ 08057

*Counsel for Appellees Kingsway Education Association and Kingsway Regional
School District Board of Education*

Frank P. Cavallo

Andrew W. Li
Brett E.J. Gorman
Parker McCay
9000 Midlantic Drive
Suite 300
Mount Laurel, NJ 08054

   *Counsel for Appellees Clearview Regional High School District Board of
   Education and Harrison Township Board of Education*

Don Horowitz
Frank C. Kanther
Public Employment Relations Commission
495 West State Street
P.O. Box 429
Trenton, NJ 08625

   *Counsel for Appellees Joel M. Weisblatt, Paul Boudreau, Paula B. Voos, John
   Bonanni, and David Jones*

-------------------

OPINION[*]

-------------------

SHWARTZ, Circuit Judge.

   Plaintiffs are New Jersey public school teachers who paid dues and other fees to

the state teachers' union, the New Jersey Education Association ("NJEA").[1]  Most

Plaintiffs notified NJEA that they wished to disaffiliate from the union and terminate all

payments to it.  NJEA allowed Plaintiffs to disaffiliate and to opt out of the payments, but

only after the lapse of waiting periods set forth in a state statute and/or in Plaintiffs'

-------------------

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.
[1] Plaintiffs have sued NJEA and several of its affiliates, the National Education
Association, Clearview Education Association, Harrison Township Education
Association, Kingsway Education Association, and the Township of Ocean Education
Association.  For ease of reference, we will refer to these entities collectively as NJEA.

union-membership agreements.  Plaintiffs assert that the waiting periods are unconstitutional under Janus v. American Federation of State, County, and Municipal Employees, 138 S. Ct. 2448, 2486 (2018).  The District Court disagreed and granted summary judgment to all Defendants.

Because the District Court correctly concluded that Plaintiffs lack standing to challenge the statute and because Janus does not impact their contractual obligations to the union, we will affirm.

I

A

NJEA represents more than 200,000 public sector educational institution employees in New Jersey.  Before Janus, these employees were required either to (1) join NJEA and pay full union dues or (2) abstain from union membership but still pay a compulsory agency fee equal to 85 percent of union dues.  If an employee wished to become an NJEA member, he had to sign NJEA's Active Membership Application, which required the prospective member to elect whether to pay the dues in cash or through automatic payroll deductions.  If the member elected to pay through automatic payroll deductions—as most members did—he had to agree that (1) he could revoke his authorization for the payroll deduction only through written notice and (2) the revocation would be effective only as of the January 1 or July 1 following the revocation notice, whichever was earlier.

In May 2018, while Janus was pending before the Supreme Court but before it was decided, New Jersey enacted the Workplace Democracy Enhancement Act ("WDEA"),

N.J. Stat. Ann. § 52:14-15.9e.  See 2018 N.J. Sess. L. Serv., ch. 15 § 6 (May 18, 2018)

(amending N.J. Stat. Ann. § 52:14-15.9e).  As relevant here, the WDEA contains two

components.  First, it provides that "[e]mployees who have authorized the payroll

deduction of fees to employee organizations," such as NJEA, "may revoke such

authorization by providing written notice to [their] public employer during the 10 days

following each anniversary date of their employment."  N.J. Stat. Ann. § 52:14-15.9e.

Second, it provides that "[a]n employee's notice of revocation of authorization for the

payroll deduction of employee organization fees shall be effective on the 30th day after

the anniversary date of [the employee's] employment."  Id.  The WDEA does not specify

how its ten-day notice period and its thirty-day waiting period interact with the

revocation period set forth in NJEA's membership application (which, as discussed, sets

the earlier of January 1 and July 1 as the effective date for the revocation of payroll-

deduction authorization).

On June 27, 2018, following passage of the WDEA, the Supreme Court decided

Janus.  138 S. Ct. at 2448.  Janus struck down a state statute that had required public-

sector employees either to join a union or, if they did not wish to join the union, to pay

the union an agency fee.  Id. at 2486.  The Court held that the statute violated the First

Amendment by compelling the nonmember employees to subsidize the union's speech

without their consent.  Id.  In the Court's view, "[n]either an agency fee nor any other

payment to the union may be deducted from a nonmember's wages, nor may any other

attempt be made to collect such a payment, unless the employee affirmatively consents to

pay," that is, unless the nonmember provides a "freely given" waiver of his First

Amendment rights.  Id.  Plaintiffs contend that Janus renders the WDEA and the effective-date provisions of their membership agreements unconstitutional.

B

Plaintiffs in the Fischer action, Susan Fischer and Jeanette Speck ("Fischer Plaintiffs"), joined NJEA on August 27, 1999 and August 30, 2001, respectively.  Upon joining, they signed their NJEA membership applications, electing to pay union dues through automatic payroll deductions.  As discussed above, by signing the applications, the Fischer Plaintiffs agreed that they could revoke their authorization for automatic payroll deductions only in writing and only with an effective date of the earlier of January 1 or July 1 following their revocation notice.  Following Janus, the Fischer Plaintiffs resigned their union membership in written notices dated July 17 and 23, 2018, that stated that they wished to terminate their membership "immediately" and that they "no longer wish[ed] to pay dues or fees to the union."  Fischer App. 67-68, 83-84.

The Fischer Plaintiffs contend that their employer, the Township of Ocean Board of Education ("TOBOE"), informed them that they could not yet terminate the deductions of dues payments from their paychecks because the WDEA permitted them to give notice of their termination only within a ten-day window following the anniversary date of their employment.  WDEA, N.J. Stat. Ann. § 52:14-15.9e.  NJEA, however, accepted the Fischer Plaintiffs' July 2018 resignation notices, consistent with NJEA's policy at that time of "accept[ing] revocation requests at any time during the year" without "reject[ing] or refus[ing] to honor those requests because they were not submitted during the 10 days following the employee's anniversary date of hire."  Fischer App. 119 ¶ 16, 156 ¶ 10, 157

7

¶ 11.  NJEA continued to withdraw dues from the Fischer Plaintiffs' paychecks until September 30, 2018, or approximately thirty days following the anniversary dates of their employment.

C

Plaintiffs in the <u>Smith</u> action, Melissa Poulson, Michael Sandberg, Leonardo Santiago, and Rachel Curcio ("Smith Plaintiffs"),[2] were also NJEA members.[3]  Like the Fischer Plaintiffs, the Smith Plaintiffs signed membership applications authorizing the automatic deduction of union dues from their paychecks and agreed that the deductions could be terminated only by written notice and only on the earlier of January 1 or July 1 following such notice.

Following <u>Janus</u>, Poulson, Sandberg, and Santiago each resigned their memberships with NJEA and demanded NJEA halt the deduction of union dues. Poulson was treated as having resigned from NJEA on July 24, 2018.[4]  Sandberg and Santiago emailed notice of their resignations on June 28 and August 8, 2018, respectively.  **Smith App. 40-42, 58 ¶ 39, 59-60 ¶ 44.**  Despite their resignations, NJEA

---

[2] The Smith Plaintiffs concede that the claims brought by two nonmember employees of New Jersey public schools, Ann Smith and Karl Hedenberg, are barred by <u>Diamond v. Pa. State Educ. Ass'n</u>, 972 F.3d 262 (3d Cir. 2020), and we will therefore affirm the dismissal of these claims.

[3] Poulson, Sandberg, and Santiago began their employment with the public school system on September 1, 2003, August 26, 2002, and September 1, 2000, respectively. Curcio began her employment on September 6, 2017.

[4] Poulson telephoned her resignation on June 28, 2018, however, NJEA did not deem this notice of resignation effective because it was not in writing.  Defendants deemed Poulson's addition as a plaintiff in the <u>Smith</u> case on July 24, 2018 as constituting "written notice of [Poulson's] resignation and revocation of dues authorization."  Smith Governor's Br. at 10.

continued deducting dues from Poulson, Sandberg, and Santiago until September 30, 2018, which was approximately thirty days following the anniversary dates of their employment.[5]  Curcio did not make any attempt to resign from the union and continues to pay union dues.

The Fischer Plaintiffs and the Smith Plaintiffs sued the state governor and NJEA on behalf of putative classes under 42 U.S.C. § 1983,[6] alleging that Defendants violated Janus by collecting union dues from them without their consent and after they indicated that they wished to terminate all such payments and seeking: (1) a declaratory judgment that the WDEA and Defendants' revocation practices are unconstitutional, (2) an injunction prohibiting Defendants from enforcing that statute and those practices, and (3) monetary damages for the dues that they paid after they submitted their resignation notices.

D

Following targeted discovery, the parties cross-moved for summary judgment. The District Court denied Plaintiffs' motions, granted Defendants' motions, and

---

[5] Defendants concede that Sandberg's revocation notice and concurrent termination of the withdrawal of union dues should have been effective on July 1, 2018. They assert that dues were withdrawn from Sandberg's paycheck through September 2018 because of an administrative error.  NJEA provided Sandberg with a refund for the dues that he paid between July 2018 and September 2018 but Sandberg has refused to accept it.

[6] The Smith Plaintiffs do not challenge the dismissal of their claims against Clearview Regional High School District Board of Education, Harrison Township Board of Education, and Kingsway Regional School District Board of Education, and four members of the New Jersey Public Employment Relations Commission, Joel M. Weisblatt, Paul Boudreau, Paula B. Voos, John Bonanni, and David Jones.

dismissed the case.  The Court held that Plaintiffs lacked Article III standing to challenge

the WDEA because (1) its ten-day notice requirement "was not enforced against

Plaintiffs as written," Fischer App. 23, and (2) its thirty-day effective date permitted

Plaintiffs "to resign their union memberships earlier than they otherwise would have been

entitled to" under their membership agreements, Fischer App. 24, and so the statute did

not cause Plaintiffs any injury.[7]  The District Court also rejected Plaintiffs' argument that

Janus requires public-sector unions to obtain waivers of their First Amendment rights

before collecting dues from members.  The Court held that "Plaintiffs have a right to

resign from the union and cease paying union dues, but Janus does not serve to invalidate

[their] previously signed" membership agreements or, concurrently, the restrictions in

those agreements relating to the effective date of a membership-resignation notice.

Fischer App. 21; see also id. at 22 ("Plaintiffs . . . may freely resign from the union, but

they must do so under the terms of the Union Dues Authorization Forms.").

Plaintiffs appeal.

II[8]

A

We first address Plaintiffs' standing to challenge the WDEA.  Because we have

jurisdiction to decide only "Cases" and "Controversies," U.S. Const., Art. III, § 2, we

---

[7] The District Court stated in dicta that if Plaintiffs had standing to challenge the WDEA, the statute's ten-day notice provision would likely be unconstitutional.

[8] Apart from the standing issues discussed herein, the District Court had subject matter jurisdiction under 28 U.S.C. § 1331.  We have appellate jurisdiction under 28 U.S.C. § 1291.

may only decide cases brought by plaintiffs with standing, <u>Susan B. Anthony List v.</u>
<u>Driehaus</u>, 573 U.S. 149, 157 (2014).  "To establish Article III standing, a plaintiff must
show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the
conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a
favorable decision.'"  <u>Id.</u> at 157-58 (quoting <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555,
560-61 (1992)).

Plaintiffs bear the burden to prove each element of Article III standing.  <u>Driehaus</u>,
573 U.S. at 158.  Additionally, Plaintiffs "'must demonstrate standing for each claim
[they] seek[] to press' and 'for each form of relief' that is sought."  <u>Davis</u>, 554 U.S. at
734 (quoting <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 352 (2006)).  Because
Plaintiffs have brought class actions, the standing requirements "must be satisfied by at
least one named plaintiff."  <u>McNair v. Synapse Grp. Inc.</u>, 672 F.3d 213, 223 (3d Cir.
2012).  Where, as here, we review motions for summary judgment, the Plaintiffs may not
"rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence
'specific facts'" establishing standing.  <u>Clapper</u>, 568 U.S. at 412 (omission in original)
(quoting <u>Lujan</u>, 504 U.S. at 561).

---

"We exercise plenary review over a district court's grant of summary judgment,"
<u>Chavarriaga v. N.J. Dep't of Corr.</u>, 806 F.3d 210, 218 (3d Cir. 2015), including any
"legal questions about a party's standing to sue and the constitutionality of federal laws,"
<u>Free Speech Coal., Inc. v. Att'y Gen.</u>, 974 F.3d 408, 419 (3d Cir. 2020).  In reviewing
motions for summary judgment, we apply the same standard as the District Court,
viewing all facts and drawing all reasonable inferences in the non-movant's favor.  <u>Hugh</u>
<u>v. Butler Cty. Family YMCA</u>, 418 F.3d 265, 266-67 (3d Cir. 2005).  Summary judgment
is appropriate when "there is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

We will examine Plaintiffs' standing to challenge the WDEA in two parts: first, their standing to challenge the provision relating to the ten-day notice period and, second, their standing to challenge the provision relating to the thirty-day waiting period.[9]

1

Plaintiffs lack standing to challenge the WDEA's ten-day notice period. The WDEA permits public employees to revoke their authorization for the payroll deduction of their union dues during an annual ten-day period following the anniversary dates of their employment. See N.J. Stat. Ann. § 52:14-15.9e ("Employees who have authorized the payroll deduction of fees to employee organizations may revoke such authorization by providing written notice to their public employer during the 10 days following each anniversary date of their employment.").

---

[9] In this section, we address whether the Fischer Plaintiffs as well as Plaintiffs Poulson, Sandberg, and Santiago have standing to challenge the WDEA. We examine Curcio's standing separately because it fails for reasons different from those of the other Plaintiffs. Curcio remains an NJEA member and has not tried to resign from the union or revoke her authorization for the automatic deduction of dues from her paycheck. Because the WDEA sets forth a procedure only for those resigning from NJEA and terminating payroll deductions, see N.J. Stat. Ann. § 52:14-15.9e, she cannot show that the statute caused her any financial injury. Moreover, she has expressed ambivalence about whether she will resign her membership in the future, and thus cannot establish an imminent threat that the WDEA will be enforced against her as Article III requires.

Curcio asserts that the uncertainty about whether the WDEA will be enforced by its terms constitutes an "informational injury," but this argument fails. Courts have limited the "informational injury" doctrine to information that is required by law to be disclosed. See, e.g., F.E.C. v. Akins, 524 U.S. 11 (1998); Carello v. Aurora Policemen Credit Union, 930 F.3d 830, 835 (7th Cir. 2019); Nader v. F.E.C., 725 F.3d 226, 229 (D.C. Cir. 2013). We need not define the precise contours of the "informational injury" doctrine here; it suffices to say that Curcio's claim does not qualify because the challenged statute does not require the disclosure of information.

The anniversary dates of the employment of Plaintiffs Poulson, Sandberg, and Santiago were in late August and early September, placing their ten-day notice periods in early to late September. However, NJEA permitted these Plaintiffs to terminate their union affiliation based on notices that they submitted in June and July 2018—long before their statutory ten-day periods. Thus, the ten-day period had no impact on Plaintiffs. Put differently, to the extent that these Plaintiffs have suffered any financial injury, the ten-day notice provision of the WDEA was not the cause of it. They therefore lack standing to recover damages as part of their statutory challenge.

Poulson, Sandberg, and Santiago also lack standing to seek injunctive relief against enforcement of the ten-day notice requirement because, at the time that their complaint was filed, there was no imminent and certain risk that the ten-day requirement would be enforced against them. To establish an injury-in-fact based on the future enforcement of a statute, a plaintiff must show that "there exists a credible threat of prosecution" under that statute. Driehaus, 573 U.S. at 159. Poulson, Sandberg, and Santiago offer no evidence of a risk that the ten-day requirement would be enforced against them other than the unremarkable fact that the statute was in effect on the date that they filed their complaint. The mere presence of a statute on the law books, standing alone, is insufficient to show a "credible threat" that the statute will be enforced against a particular plaintiff. Id. Plaintiffs must do more to establish standing based on a threat of future enforcement. See, e.g., Driehaus, 573 U.S. at 160, 163-64 (plaintiffs established credible threat of future enforcement proceeding based on the statute's "history of past enforcement," the fact that "any person" can commence such a proceeding, and the fact

that such proceedings "are not a rare occurrence"). Poulson, Sandberg, and Santiago's failure to offer any evidence establishing a credible threat of enforcement is fatal to their challenge to the ten-day notice provision.[10]

The Fischer Plaintiffs also lack standing to challenge the ten-day notice period. Although nonparty TOBOE informed the Fischer Plaintiffs that they could revoke their dues authorizations only during the ten-day window set forth in the WDEA, NJEA offers undisputed evidence that it accepted and processed the Fischer Plaintiffs' July 2018 revocation notices—even though those notices were submitted earlier than the ten-day notice period—consistent with union policy. The Fischer Plaintiffs have offered no evidence that NJEA or the Governor were responsible for TOBOE's communications or that Defendants otherwise intended or threatened to enforce the ten-day notice requirement against them. See Lujan, 504 U.S. at 561 (requiring plaintiffs at the summary judgment stage to come forward with evidence of "specific facts" establishing standing). Thus, the Fischer Plaintiffs have not shown that Defendants enforced (or threatened to enforce) the ten-day notice requirement against them. Accordingly, the Fischer Plaintiffs lack standing to challenge this portion of the WDEA. Cf. Matter of Christopher Columbus, LLC, 872 F.3d 130, 132 n.3 (3d Cir. 2017) (relying on "the undisputed facts drawn from the summary judgment record" to determine whether subject matter jurisdiction exists).

---

[10] Because Poulson, Sandberg, and Santiago lack standing to challenge the ten-day notice period, we need not address whether their claims are moot. Already, LLC v. Nike, Inc., 568 U.S. 85, 91-92 (2013) (distinguishing between standing and mootness); Hartnett v. Pa. State Educ. Ass'n, 963 F.3d 301, 305-06 (3d Cir. 2020) (same).

2

Plaintiffs also lack standing to challenge the WDEA's requirement that an employee wait until "the 30th day after [his] anniversary date of employment" before his dues-authorization revocation will be effective.  N.J. Stat. Ann. § 52:14-15.9e.

As to the Fischer Plaintiffs and two of the Smith Plaintiffs, Poulson and Santiago, it is undisputed that the thirty-day waiting-period requirement was enforced against these Plaintiffs: they all notified NJEA in July or August 2018 that they wished to terminate all dues payments to the union, but the union continued to deduct dues from their paychecks until September 30, 2018, which was approximately thirty days after the anniversary dates of their employment.  Critically, however, these Plaintiffs still would not have been permitted to terminate their union dues on an immediate basis had the WDEA not been enacted.  Rather, absent the statute, they would have been bound by the effective dates set forth in their membership agreements (i.e., the earlier of January 1 or July 1 following their termination notices).  Because these Plaintiffs all submitted written notice of their intent to terminate after July 1, 2018, the earliest their membership agreements would have permitted them to stop paying dues absent the WDEA would have been January 1, 2019.  The WDEA, in contrast, allowed these Plaintiffs to terminate the payment of union dues on September 30, 2018—three months earlier than what would have been possible under their membership agreements standing alone.  Effectively, the statute's thirty-day provision saved the Plaintiffs from paying three months of unwanted union dues.

That the WDEA's thirty-day provision conferred a benefit on the Fischer Plaintiffs, Poulson, and Santiago renders them unable to establish the causation element

of Article III standing.  The causation element "requires, at a minimum, that the

defendant's purported misconduct was a 'but for' cause of the plaintiff's injury."

Finkelman v. Nat'l Football League, 810 F.3d 187, 198 (3d Cir. 2016); see also Mielo v.

Steak 'n Shake Operations, Inc., 897 F.3d 467, 481 (3d Cir. 2018); Env't Texas Citizen

Lobby, Inc. v. ExxonMobil Corp., 968 F.3d 357, 377 (5th Cir. 2020) (Oldham, J.,

concurring) (collecting cases), as revised (Aug. 3, 2020).  Here, we cannot say that "but

for" the Defendants' alleged misconduct (their enforcement of the WDEA's thirty-day

provision) these Plaintiffs would not have suffered the injury of which they complain (the

payment of union dues following their attempt to terminate their affiliation with NJEA).

To the contrary, absent enforcement of the WDEA's thirty-day provision, these Plaintiffs

would have sustained a greater injury because they would have had to wait three months

longer before the withdrawal of union dues would have stopped.  Under these

circumstances, the Fischer Plaintiffs, Poulson, and Santiago cannot establish that the

WDEA's thirty-day provision is the cause of their injuries.

For similar reasons, the Fischer Plaintiffs, Poulson, and Santiago cannot establish

redressability.  This element requires us to ask whether a plaintiff's injury would be

redressed by a favorable court action.  See Driehaus, 573 U.S. at 158; Toll Bros., Inc. v.

Twp. of Readington, 555 F.3d 131, 142 (3d Cir. 2009).  The remedy sought here, a

declaration that the WDEA's thirty-day waiting period is unconstitutional and an

injunction against Defendants enforcing it, would not redress these Plaintiffs' injuries.

As discussed, invalidation of the statute would leave these Plaintiffs bound by the

effective date in their respective membership agreements, each of which requires them to

pay union dues for a longer period than required under the WDEA.  Because a favorable

judicial decision would not reduce Plaintiffs' injuries, these Plaintiffs cannot establish

redressability.  See 15 Moore's Federal Practice: Civil §101.42 (2020) ("[T]he

redressability element [of Article III standing] is not satisfied if a favorable result would

eliminate one of multiple causes of an injury without actually decreasing the injury at

all.").[11]  We hold, therefore, that the Fischer Plaintiffs, Poulson, and Santiago lack

standing to challenge the thirty-day waiting period in the WDEA.[12]

_____

[11] By way of analogy, other courts have held that redressability is not satisfied
when a plaintiff challenges a statute whose prohibitions are embodied in another law that
would remain in effect even if the plaintiff received the relief he sought.  See Kaspersky
Lab, Inc. v. United States Dep't of Homeland Sec., 909 F.3d 446, 465 (D.C. Cir. 2018)
(holding that plaintiffs failed to establish standing to challenge an agency directive where
a separate federal statute "prohibit[ed] all the same conduct as the [d]irective"; "even if
. . . the Court were to order the rescission of the [directive], [the plaintiff's] harms would
not be redressed"); Delta Constr. Co. v. E.P.A., 783 F.3d 1291, 1296-97 (D.C. Cir. 2015)
(holding that plaintiffs failed to establish causation and redressability where they
challenged an agency's regulation but another agency had a "substantially identical"
regulation in effect; "[b]ecause a separate action—[the non-challenged regulations]—
independently causes the same alleged harm as the challenged action, the [plaintiffs] are
unable to establish the 'necessary causal connection' between the [challenged
regulations] and their purported injury"); White v. United States, 601 F.3d 545, 552 (6th
Cir. 2010) (holding that plaintiffs lacked standing to challenge a federal statute
prohibiting conduct that was also "banned to a greater or lesser degree" in the laws of "all
fifty states and the District of Columbia"; the plaintiffs' injuries would not be "redressed
by the relief [they] seek, since the states' prohibitions . . . would remain in place
notwithstanding any action [the Court] might take in regard to the [federal statute]").
Both here and in these cases, a favorable decision would eliminate only one cause of the
Plaintiffs' injuries, while leaving in place another, independent cause of the same
injuries.
    [12] Our concurring colleague finds flaws in our standing analysis, but we think the
analysis comports with the precedent.  First, we know that the standing and merits
analysis are different.  Second, we recognize that "but for" causation is just one means of
satisfying standing's causation requirement.  Third, our views likely diverge from his
because we conducted the analysis mindful that we are obligated to examine standing
both on a claim-by-claim basis and based upon the relief sought.  See Davis, 554 U.S. at

Plaintiff Sandberg also lacks standing to challenge the WDEA's thirty-day waiting period. Sandberg notified NJEA on June 28, 2018 that he wished to revoke his dues authorization. Under his membership agreement—which allowed employees to terminate the withdrawal of dues from their paychecks on the earlier of July 1 or January 1 following notice of termination—Sandberg should have been permitted to terminate the withdrawal of dues from his paycheck on July 1, 2018. Due to an administrative error, however, NJEA continued withdrawing dues from Sandberg's paycheck through September 30, 2018. Sandberg's injury, therefore, was caused by an inadvertent processing error, not the WDEA's thirty-day waiting period. Because Sandberg cannot satisfy the causation element, he, like his co-Plaintiffs, lacks standing to challenge this provision of the WDEA.[13]

For these reasons, we will affirm the District Court's holding that Plaintiffs lack Article III standing to challenge the WDEA.[14]

---

734. The concurrence appears to examine the injury-in-fact component based only on the claim and does not consider whether Plaintiffs have standing to seek the particular relief that they want. As we explain, Plaintiffs' purported injury would continue even if the WDEA were voided. Thus, their request for a declaration that the WDEA is unconstitutional would not redress their alleged injury because their membership agreements would still require them to make the payments that they contend are unlawful under Janus.

[13] Because Sandberg lacks standing to pursue his claim, we need not address whether NJEA's offer to refund him the dues that were erroneously withdrawn from his paycheck between July and September 2018 mooted his claim.

[14] Given that Plaintiffs lacked standing to bring this claim, the District Court lacked jurisdiction to opine that it would find that the ten-day provision in the WDEA unconstitutional if Plaintiffs had standing to challenge it. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-02 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.").

B

Plaintiffs contend that <u>Janus</u> provides them a right to terminate their payments to NJEA at any time, notwithstanding the membership agreements that they signed, which obligated them to continue paying dues until a specific date (the earlier of January 1 or July 1 following notice of resignation).[15]  Plaintiffs effectively read <u>Janus</u> as abrogating the commitments set forth in those agreements.  We disagree.

Changes in decisional law, even constitutional law, do not relieve parties from their pre-existing contractual obligations.  <u>See, e.g.</u>, <u>Cohen v. Cowles Media Co.</u>, 501 U.S. 663, 669-70 (1991); <u>Ehrheart v. Verizon Wireless</u>, 609 F.3d 590, 595-96 (3d Cir. 2010) (class action settlement agreement); <u>McKeever v. Warden SCI-Graterford</u>, 486 F.3d 81, 85 (3d Cir. 2007) (plea agreement); <u>United States v. Lockett</u>, 406 F.3d 207, 212-13 (3d Cir. 2005) (plea agreement); <u>Coltec Indus. v. Hobgood</u>, 280 F.3d 262, 265, 278 (3d Cir. 2002) (settlement agreement).[16]  Put succinctly, "a party cannot avoid its independent contractual obligations simply because a change in the law confers upon it a benefit" after the agreement is signed.  <u>Ehrheart</u>, 609 F.3d at 596.  Rather,

> [b]y binding oneself [to an agreement,] one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one.  That is the risk inherent in all contracts; they limit the

---

[15] Defendants do not dispute that Plaintiffs have standing to pursue their challenges to the membership agreements.

[16] <u>See also, e.g.</u>, <u>Kia Motors Am., Inc. v. Glassman Oldsmobile Saab Hyundai, Inc.</u>, 706 F.3d 733, 738 (6th Cir. 2013) ("[I]t is a generally accepted rule of construction that 'changes in the law subsequent to the execution of a contract are not deemed to become part of [the] agreement unless its language clearly indicates such to have been [the] intention of [the] parties.'" (quoting 11 Richard A. Lord, <u>Williston on Contracts</u> § 30:23 (4th ed. 1990))).

parties' ability to take advantage of what may happen over the period in which the contract is in effect.

McKeever, 486 F.3d at 89 (quoting United States v. Bownes, 405 F.3d 634, 636 (7th Cir. 2005)).[17]

In the First Amendment context, this principle applies because the state common law of contracts is a "law of general applicability" that does not run afoul of First Amendment principles.  Cohen, 501 U.S. at 670.  Put simply, the First Amendment does not provide a right to "disregard promises that would otherwise be enforced under state law."  Id. at 672.  Following these principles, a "swelling chorus of courts" has

---

[17] In an attempt to distinguish cases holding that intervening changes in the law do not abrogate pre-existing contractual obligations, Plaintiffs argue that their membership agreements with NJEA were not valid and enforceable contracts.

Plaintiffs are incorrect.  First, the membership forms make clear that they are agreements between two parties, the member and the union.  The forms are titled "NJEA-NEA Active Membership Application," Smith App. 35, and set forth annual dues that are to be paid by the member to the union.  As Plaintiffs conceded to the District Court, a contract need not contain signatures to be enforceable.  See Dkt. 179 at 15 (stating that Defendants "correctly note[] that signatures are not necessary to form a contract").

Second, the membership agreements are supported by consideration.  See Seaview Orthopaedics ex rel. Fleming v. Nat'l Healthcare Resources, Inc., 841 A.2d 917, 921 (N.J. Super. Ct. App. Div. 2004).  NJEA members receive numerous benefits unavailable to nonmembers in exchange for their payment of dues under the union's membership agreements, such as free legal assistance, the right to vote in union elections and hold positions within the union, and numerous forms of insurance coverage, retirement programs, and member discounts.  Plaintiffs lost access to these benefits once they resigned their union memberships.

Third, numerous jurisdictions have concluded that union membership agreements are enforceable contracts, and Plaintiffs provide no authority to the contrary.  See, e.g., Int'l Ass'n of Machinists v. Gonzales, 356 U.S. 617, 618 (1958); Fisk v. Inslee, 759 F. App'x 632 (9th Cir. 2019); Int'l Ass'n of Machinists Dist. Ten and Local Lodge 873 v. Allen, 904 F.3d 490 (7th Cir. 2018); Shea v. McCarthy, 953 F.2d 29, 30 (2d Cir. 1992); N.L.R.B. v. U.S. Postal Serv., 827 F.2d 548, 554 (9th Cir. 1987); N.L.R.B v. U.S. Postal Serv., 833 F.2d 1195, 1196 (6th Cir. 1987).  For these reasons, Plaintiffs' membership applications are valid and enforceable contracts.

recognized that "Janus does not extend a First Amendment right to avoid paying union dues" when those dues arise out of a contractual commitment that was signed before Janus was decided.  Belgau v. Inslee, No. 19-35137, __ F.3d __, 2020 WL 5541390, at *2 (9th Cir. Sept. 16, 2020) (collecting cases).

These principles apply to Plaintiffs' claims.  Plaintiffs chose to enter into membership agreements with NJEA, rather than abstain from membership and, instead, pay nonmember agency fees.  They did so in exchange for valuable consideration.  By signing the agreements, Plaintiffs assumed the risk that subsequent changes in the law could alter the cost-benefit balance of their bargain.  Because Janus does not abrogate or supersede Plaintiffs' contractual obligations, which arise out of longstanding, common-law principles of "general applicability," Cohen, 501 U.S. at 670; see also Belgau, 2020 WL 5541390, at *2, Janus does not give Plaintiffs the right to terminate their commitments to pay union dues unless and until those commitments expire under the plain terms of their membership agreements.[18]

---

[18] Because enforcement of Plaintiffs' membership agreements does not violate the First Amendment given that those agreements are enforceable under laws of general applicability, see Cohen, 501 U.S. at 670; Belgau, 2020 WL 5541390, at *2, we reject Plaintiffs' argument that Defendants were required to obtain an affirmative First Amendment waiver from Plaintiffs before deducting union dues from their paychecks. Janus held that such waivers are required only if a union fee would, absent the waiver, constitute compelled speech and thereby violate the First Amendment.  138 S. Ct. at 2486.  Given that no First Amendment violation exists here, no waiver is needed.  See Belgau, 2020 WL 5541390, at *2 (holding that Janus "discussed constitutional waiver [only] because it concluded that nonmembers' First Amendment right had been infringed" and that the Court "in no way created a new First Amendment waiver requirement for union members before dues are deducted pursuant to a voluntary agreement" (emphasis in original)).

Therefore, the District Court correctly concluded that Plaintiffs' challenge to their membership agreements fails.

III

For the foregoing reasons, we will affirm the orders of the District Court.

*Fischer v. Governor of New Jersey*, No. 19-3914
*Smith v. New Jersey Education Association*, No. 19-3995

PHIPPS, *Circuit Judge*, concurring in part and concurring in the judgment.

I agree with the Majority's outcome and much of its analysis, but I write

separately to respectfully disagree with several aspects of the Majority's Article III

standing analysis for the former-union-member plaintiffs (Susan Fischer, Jeanette Speck,

Melissa Poulson, Michael Sandberg, and Leonardo Santiago).

## I.

As I see it, those former union members have Article III standing.  They meet the

first element (injury in fact) because they have suffered an actual injury that is concrete

and particularized: the deduction of union dues from their wages after they gave notice

revoking authorization.  *See Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017)

("[F]inancial harm is a 'classic' and 'paradigmatic form[]' of injury in fact.'" (quoting

*Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291, 293 (3d Cir. 2005))).  *See*

*generally Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("To establish injury in

fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected

interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical.'" (citation omitted)).

From that injury in fact, those former union members seek relief in two respects.

First, they sue to void provisions of their union membership agreements and to recover

union dues deducted from their wages after they revoked authorization to do so.  Second,

they seek injunctive and declaratory relief to remedy the asserted unconstitutionality of

New Jersey's Workplace Democracy Enhancement Act (WDEA). That statute
establishes an annual ten-day period to revoke authorization for deduction of union dues
as well as a single annual effective date for such revocations. *See* N.J. Stat. Ann.
§ 52:14-15.9e (as amended May 18, 2018).

The first request for relief – related to the constitutional challenges to the
membership agreements – satisfies the remaining two elements of Article III standing
(fairly-traceable causation and redressability). The injury may be fairly traced to the
allegedly wrongful conduct (the membership agreements' allowance of union-dues wage
deductions after revocation of authorization for those deductions). Similarly, the relief
sought (recovery of those dues) would redress the injury in fact.[1]

My principal disagreement with the Majority Opinion concerns the former union
members' second request for relief – as to the constitutionality of two provisions of the
WDEA. The Majority engages in a but-for-causation analysis and concludes that the
injury in fact (the continued withholding of union dues) was not caused by the two
challenged provisions of the WDEA (the ten-day annual revocation period and the single
annual effective date for revocations), but rather by the membership agreements, which
provided for the withholding of dues for a period of time after revocation. That reasoning

---

[1] The Majority reaches the same conclusion but for a different reason: "Defendants do not
dispute that Plaintiffs have standing to pursue their challenges to the membership
agreements." Maj. Op. n.15. *But see FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231
(1990) ("The federal courts are under an independent obligation to examine their own
jurisdiction, and standing 'is perhaps the most important of [the jurisdictional]
doctrines.'" (alteration in original) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)));
*Am. Auto Ins. Co. v. Murray*, 658 F.3d 311, 319 n.5 (3d Cir. 2011) ("[P]arties are not
permitted to waive constitutional standing.").

rests on a faulty premise: that causation for purposes of Article III standing requires but-for causation. Certainly, a showing of but-for causation suffices to establish fairly-traceable causation. *See, e.g.*, *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 481 (3d Cir. 2018); *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016); *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013); *Pitt News v. Fisher*, 215 F.3d 354, 360–61 (3d Cir. 2000). But the Supreme Court has never required but-for causation to establish Article III causation. To the contrary, it has admonished against such rigidity. *See Allen v. Wright*, 468 U.S. 737, 751 (1984) ("[T]he constitutional component of standing doctrine incorporates concepts concededly not susceptible of precise definition. . . . These terms cannot be defined so as to make application of the constitutional standing requirement a mechanical exercise."). Consistent with the Supreme Court, this Court has recognized that but-for causation is not the only means of establishing fairly-traceable causation. *See Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 195 (3d Cir. 2004) (Alito, J.) ("Article III standing demands 'a causal relationship,' but neither the Supreme Court nor our Court has ever held that but-for causation is always needed."); *see also Const. Party of Pa. v. Aichele*, 757 F.3d 347, 366 (3d Cir. 2014) ("[T]here is room for concurrent causation in the analysis of standing . . . ."); *Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3d Cir. 1990) ("The 'fairly traceable' requirement . . . is not equivalent to a requirement of tort causation."). In short, but-for causation is *sufficient* to establish fairly-traceable causation, but it is not *necessary*. The Majority thus errs by treating but-for causation as necessary for fairly-traceable causation.

3

Much mischief would result if but-for causation were necessary for Article III standing. For example, a regulated party would lack standing to challenge a statute that a regulation parrots or supplements. The statute would not be a but-for cause of the injury since the regulation would also cause the injury. Yet no court has gone that far; and indeed, this Court has reached the opposite result by permitting challenges to a statute *and* to its implementing regulations. *See, e.g.*, *Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408, 422–23 (3d Cir. 2020). Closer to home, requiring but-for causation for Article III standing would undermine aspects of the Majority's own analysis. If but-for causation were required for Article III standing, then it would be improper for the Majority to reach the merits of the challenges to the membership agreements. Because both allegedly unconstitutional causes (the membership agreements and the WDEA) would independently bring about the continued deduction of union dues, neither would operate as a but-for cause of the allegedly unlawful deductions. By its own reasoning, then, the Majority should not reach the merits of the dues-membership-agreement challenges but should instead dismiss *all* of the former union members' claims for lack of standing. It does not do so and thus does not fully carry out its pronouncement that but-for causation is required for Article III standing.

Rather than base today's decision on an embedded contradiction, this case presents a good opportunity to clarify the causation standard for Article III standing. If an injury has multiple sufficient causes, then any of those causes suffices to establish fairly traceable causation. *See Khodara Env't*, 376 F.3d at 194–95 (holding that a plaintiff had standing to seek a declaratory judgment regarding the validity of a federal statute where

the injury was fairly traceable to both the statute and an independent state permit requirement).  *See generally* Restatement (Third) of Torts § 27 cmt. *b* (Am. L. Inst. 2010) ("Courts and scholars have long recognized the problem of overdetermined harm—harm produced by multiple sufficient causes—and the inadequacy of the but-for standard for [that] situation.").  Here, the continued deduction of union dues from the former union employees' wages resulted from multiple sufficient causes: the WDEA and the membership agreements.  While challenging either would be enough for fairly-traceable causation (but for not redressability), the former union members challenge both causes in the same litigation.  In this circumstance, in which neither cause is "the independent action of some third party not before the court," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted), the former union members have satisfied Article III's fairly-traceable-causation requirement as to both causes.

Accounting for multiple sufficient causes, the former union members also meet the redressability element for their challenges to the WDEA.  As the Supreme Court has explained, assessing whether an injury "is likely to be redressed by a favorable judicial decision," *Spokeo*, 136 S. Ct. at 1547, involves a causation analysis:

> The "fairly traceable" and "redressability" components of the constitutional standing inquiry were initially articulated by this Court as "two facets of a single causation requirement."  To the extent there is a difference, it is that the former examines the causal connection between the assertedly unlawful conduct and the alleged injury, whereas the latter examines the causal connection between the alleged injury and the judicial relief requested.

*Allen*, 468 U.S. at 753 n.19 (quoting Charles Alan Wright, Law of Federal Courts § 13, p. 68 n.43 (4th ed. 1983)).  In the context of multiple sufficient causes, remedying one

cause would not necessarily lead to redress of the injury, which could still occur due to the other cause(s). But to avoid the "absurd" conclusion that no party has standing in the context of multiple sufficient causes, *Khodara Env't*, 376 F.3d at 195, the redressability analysis focuses on whether "a favorable judicial decision" would redress the injury in fact, *Spokeo*, 136 S. Ct. at 1547. And here, a judicial decision allowing recovery of union dues would redress the former union members' injury. But such a favorable decision is possible only if both causes of the continued union-dues deductions (the membership agreements and the WDEA) are unconstitutional. Because the remedy requested by the former union members addresses both of those multiple sufficient causes, a favorable judicial decision – granting declaratory or injunctive relief along with monetary relief – would likely redress their injury.

For these reasons, after accounting for their claims as well as the relief sought, I believe that the former union members have established Article III standing to challenge the constitutionality of the WDEA. They have alleged an injury in fact (the continued withholding of union dues from their wages). That injury fairly traces to the challenged WDEA provisions, which directed the continued dues deductions. And the favorable judicial decision sought by the former union members – which would void both the WDEA and their membership agreements – would likely redress their injury by allowing recovery of the withheld union dues.

## II.

In reaching a contrary result, the Majority overextends its standing analysis to consider the merits of the former union members' claims. It evaluates the validity of

their membership agreements and finds no infirmity.  From there, the Majority reasons

that the former union members lack Article III standing to challenge the WDEA.

     The problem with that reasoning is that it hybridizes a threshold standing inquiry

and a full merits review.  Only by analyzing the merits of one claim does the Majority

find a lack of standing for the other.  That is improper.  *See Whitmore v. Arkansas*,

495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing 'in no way depends on

the merits of the [petitioner's] contention that particular conduct is illegal.'" (alteration in

original) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975))); *see also Cottrell*,

874 F.3d at 162 ("[W]e separate our standing inquiry from any assessment of the merits

of the plaintiff's claim."); *Pitt News*, 215 F.3d at 361 n.4 ("A party may demonstrate

standing to litigate a claim even if they fail to make out a constitutional violation on the

merits.").  Standing for both claims should be evaluated before considering the merits of

either.  Doing so here yields the result that the former union members have standing for

both their dues-recovery claims and their challenges to the WDEA.

     But that does not mean that the Majority's underlying analysis has no role in

resolving this case.  Its reasoning, which accounts for the failed challenges to the

membership agreements, belongs in the merits phase – not as part of the standing inquiry.

     When an injury has multiple sufficient causes, the failure of one claim may bear

on the appropriateness of relief for the other(s).  For instance, if one cause of the injury is

upheld as legal, then the challenge to the remaining cause(s) may lose the "sufficient

immediacy and reality [needed] to warrant the issuance of a declaratory judgment."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v.*

7

*Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  That is so here.  Because the former union members' constitutional challenges to their membership agreements fail, they cannot recover the withheld dues: those dues were deducted under the now-upheld terms of the membership agreements.  It may still be that the WDEA is unconstitutional, but after rejecting the membership-agreement challenges on the merits, the issue of the constitutionality of the WDEA has lost the immediacy and reality needed for declaratory relief.  Nor would successful challenges to the constitutionality of the WDEA prevent an irreparable injury here – especially after the membership agreements have been found licit – and thus this situation does not warrant "the strong medicine of [an] injunction." *Steffel v. Thompson*, 415 U.S. 452, 466 (1974).

\* \* \*

In sum, I believe that the former union members have Article III standing for their challenges to the WDEA.  But because I agree with the Majority's rejection of the former union members' challenges to their membership agreements, I concur in the judgment because neither declaratory nor injunctive relief is appropriate for their challenges to the WDEA.